FENNEMORE CRAIG, P.C.
Gerald L. Shelley (No. 010453)
Nancy J. March (No. 012802)
2394 East Camelback Road
Suite 600
Phoenix, AZ  85016-3429
Telephone:  (602) 916-5000
Email:  gshelley@fclaw.com
         nmarch@fclaw.com

*Attorneys for Debtor*
*Star Mountain Resources, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| STAR MOUNTAIN RESOURCES, INC. *f/d/b/a* Jameson Stanford Resources Corp., *f/d/b/a* MyOtherCountryClub.com, | Case No: 2:18-bk-01594-DPC |
| Debtor. | **DEBTOR'S PLAN OF REORGANIZATION DATED JUNE 21, 2018** |

## ARTICLE I

## <u>INTRODUCTION</u>

Debtor and debtor in possession STAR MOUNTAIN RESOURCES, INC. (the "Debtor") submits the following Plan of Reorganization Dated June 21, 2018 (the "Plan"). Reference is made to the "<u>Disclosure Statement for Debtor's Plan of Reorganization Dated June 21, 2018</u>" (the "Disclosure Statement") for, among things, (i) a discussion of the Debtor's history and property, and (ii) a summary and analysis of the Plan.   All Holders of Claims or Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and the Plan before voting to accept or reject the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.

ALL CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT THAT ACCOMPANIES THE PLAN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  AS ORDERED BY THE

BANKRUPTCY COURT, BALLOTS TO ACCEPT OR REJECT THE PLAN MUST BE CAST BY _____, WHICH MEANS THAT BALLOTS MUST BE **RECEIVED** BY COUNSEL FOR THE DEBTOR AS PROVIDED IN THE BALLOT ACCOMPANYING THE PLAN.  AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS INFORMATION CONCERNING THE DEBTOR, THE HISTORICAL BACKGROUND OF THE CHAPTER 11 CASE AND THE PREPETITION PERIOD, FINANCIAL ISSUES WITH REGARD TO THE DEBTOR AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR AUTHORIZED BY THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

## ARTICLE II

### DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.**    **Scope of Definitions; Rules of Construction**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings hereinafter stated.  Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules (hereinafter defined), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number.  The masculine gender shall include the feminine, and the feminine gender shall include the masculine.  Moreover, for purposes of the Plan, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable, unless the context otherwise requires.

The defined terms stated in Article II also are substantive terms of the Plan; and Article II will be deemed incorporated throughout the rest of the Plan to convey the substantive provisions included in the defined terms.

**B.**    **Definitions**

1.    "Administrative Claim" means any Claim under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary

expenses of preserving the Assets of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation and reimbursement of expenses allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the Debtor under Section 1930 of Chapter 123 of Title 28 of the United States Code, all as may arise prior to the Confirmation Date.

2.     "Allowed", with respect to Claims and Interests, means: (a) any Claim or Interest, proof of which was timely filed, or not required to be filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late-filed with leave of the Bankruptcy Court; (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely filed; provided, however, that no objection to the allowance of the Claim or Interest has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order. Except as otherwise specified in the Plan or a Final Order of the Bankruptcy Court, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely filed, is not considered Allowed and shall be expunged without further notice, other than notice to the Holder of such Claim or Interest of such expungement.

3.     "Allowed Claims Distribution Fund" means the segregated fund established by the Debtor or Distribution Agent to hold proceeds from the collection of the Titan Promissory Note and from the sale of the Titan Common Stock, and from which Distributions will be made on the Distribution Dates to the Holders of Allowed Claims, *pro rata*, until the Holders of such Claims have been paid in full. When all Holders of Allowed Claims have been paid in full, the balance in the Allowed Claims Distribution Fund will be repaid to the Debtor.

4.     "Allowed Claims Distribution Procedure" is the procedure described below by which the Distribution Agent will pay the Holders of Allowed Claims.

On each Distribution Date, the Distribution Agent will pay the balance in the Allowed Claims Distribution Fund to each Holder of an Allowed Claim in Classes 1, 3, 4 and 5 under the Plan by multiplying the balance in the Allowed Claims Distribution Fund by the following percentage

Unpaid balance of Holder's Allowed Claim
Total amount of unpaid Allowed Claims in Classes 1, 3, 4 and 5

FENNEMORE CRAIG, P.C.

PHOENIX

The result after applying the above formula to each Holder's Allowed Claim will be the amount to be paid to the Holder of that Claim.

On the fifth anniversary of the first Distribution Date, to the extent any Titan Common Stock has not been sold, and any Allowed Claims remain unpaid, the Titan Broker will sell as much of the remaining Titan Common Stock as is necessary to repay all remaining unpaid Allowed Claims in Classes 1, 3, 4 and 5 in full no later than the date that is five and one-half (5 ½) years after the first Distribution Date.

If the balance in the Allowed Claims Distribution Fund on the day after the Final Cash Distribution Date is insufficient to pay all Allowed Claims in full, all pre-Petition Date Interests (in Class 6 of the Plan) in the Debtor will be canceled and all Holders of Allowed Claims will receive newly issued shares of the Debtor's common stock, in proportion to the amounts of their Allowed Claims.

5.    "Asset" means any asset, property or interest therein of the Estates as provided for under Section 541 of the Bankruptcy Code.

6.    "Aviano" means Aviano Financial Group, LLC, a Delaware limited liability company.

7.    "Aviano Indemnification Claims" means those amounts for which Aviano is obligated to indemnify the Debtor with respect to (i) the SGS Litigation, namely: (a) any amount for which the Debtor and/or Northern Zinc is liable to SGS in the SGS Litigation; and (b) all attorneys' fees payable by the Debtor to its counsel in the SGS Litigation, Onsager, and (ii) the "Confirmation and Agreement Related to Valarga Group LLC" entered into between Northern Zinc, LLC and Aviano dated as of October 13, 2015.

8.    "Aviano Litigation" means the lawsuit commenced by Aviano against the Debtor in the District Court, City and County of Denver, Colorado, pending as Case No. 2017cv030605, together with all claims raised in the counterclaims and third-party complaint filed by the Debtor against Bernard Guarnera, David Linsley, Lanesborough, LLC, and others.

9.    "Aviano Litigation Claims" means the Claims asserted by Aviano in its Proof of Claim.

10.    "Aviano Netted Claims" means the Aviano Litigation Claims as offset by the Aviano Indemnification Claims and any amounts due to the Debtor from Aviano on counterclaims brought in the Aviano Litigation or on other claims asserted by the Debtor against Aviano.

11. "<u>Ballots</u>" means each of the ballots distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote on this Plan, for the purpose of indicating an acceptance or rejection of this Plan.

12. "<u>Balmat Litigant</u>" means a Holder of a Claim against the Debtor by a Person, other than Aviano, who is a party to, represents a party to, or is otherwise involved in the Aviano Litigation or the SGS Litigation. Balmat Litigant includes SGS, Bernard Guarnera, David Linsley, Lanesborough, Fognani, Haynes and Boone, and Onsager.

13. "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, 11 U.S.C. §§ *et seq.*, and as such Title has been, or may be, amended from time to time.

14. "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Arizona or such other court as may have jurisdiction over the Chapter 11 Cases.

15. "<u>Bankruptcy Rules</u>" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings herein, and the Local Rules of Bankruptcy Procedure for the District of Arizona, as applicable to the Chapter 11 Cases or proceedings therein.

16. "<u>Bar Date</u>" means July 9, 2018, except as otherwise provided in the Plan or by Bankruptcy Court order.

17. "<u>Business Day</u>" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

18. "<u>Cash</u>" means legal tender of the United States or equivalents thereof.

19. "<u>Chapter 11 Case</u>" means the bankruptcy case for the Debtor pending before the Bankruptcy Court under Case No. 2:18-bk-1594-DPC.

20. "<u>Claim</u>" means a claim against the Debtor, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

21. "<u>Claim Objection Deadline</u>" means forty-five (45) days after the Confirmation Date of the Plan, as such date may be extended by order of the Bankruptcy Court, which is the last day for filing objections to Claims as provided in Article VI of the Plan.

22. "Class" means a category of Claims or Interests, as described in Article III below.

23. "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

24. "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

25. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

26. "Confirmation Hearing" means the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be continued from time to time.

27. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

28. "Contingent or Barred Claims" means any Claim (other than the Aviano Claim, a Balmat Litigant Claim or an Insider Claim) that is listed on the Debtor's Schedules as contingent, unliquidated or disputed and for which either no Proof of Claim is filed before the Bar Date or, if a Proof of Claim is timely filed, the Debtor files an objection to the Claim stating that such Claim should be classified as a Contingent or Barred Claim.

29. "Creditor" means any Person who holds a Claim against the Debtor.

30. "Debtor" means Star Mountain Resources, Inc., which is the subject of this Chapter 11 Case, including in its capacity as "reorganized" Debtor after the Confirmation Date, and including its nonoperating, wholly owned subsidiaries Northern Zinc, LLC, a Nevada limited liability company, and Bolcán Mining Corporation, a Nevada corporation.

31. "Disallowed" means a Claim or any portion thereof that: (a) has been disallowed or expunged by a Final Order; (b) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Debtor; or (c) as to which no proof of Claim has been timely filed or is deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

32. "Disclosure Statement" means the disclosure statement with respect to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as it may be altered, amended, supplemented or modified from time to time, and distributed in

accordance with Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018.

33. "Disputed Claim" means any Claim not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court: (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court; (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed; (c) that is disputed in accordance with the provisions of this Plan; or (d) as to which the Debtor or other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of the Bankruptcy Court, or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order.

34. "Distribution" means any payment of Cash or property required under the Plan.

35. "Distribution Agent" means the Debtor or agent selected by the Debtor to perform the Distributions required under the Plan.

36. "Distribution Date" means those dates on which Distributions will be made by the Distribution Agent to Holders of Allowed Claims. The first Distribution Date will occur on the first Business Day that is 90 days after the Effective Date. Subsequent Distribution Dates will occur every 180 days thereafter, on a Business Day, until the date that is five and one-half (5 1/2) years after the first Distribution Date, unless Allowed Claims have been paid in full prior to the final Distribution Date.

37. "Effective Date" means the first Business Day that is: (a) at least fifteen (15) days after the Confirmation Date, and (b) on which no stay of the Confirmation Order is in effect, and (c) on which the Debtor holds sufficient Cash (whether such Cash is pre-Petition Date Cash or Cash in the Allowed Claims Distribution Fund from collection on the Titan Promissory Note) to pay Professional Fee Claims in full (unless agreed otherwise in writing by the Holders of such Professional Fee Claims) and the Allowed Class 2 Unsecured Trade Creditor Claims in full.

38. "Equity Security" means all issued, unissued, authorized or outstanding shares of common stock or preferred stock of the Debtor, together with any warrants, options or contractual rights to purchase or acquire any such securities at any time, and all rights arising with respect thereto.

39.     "Estate" means the estate of the Debtor in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

40.     "Final Cash Distribution Date" means that date when the last distribution is made from the Allowed Claims Distribution Fund, after the Titan Common Stock has been sold.

41.     "Final Decree" means an order entered by the Bankruptcy Court closing the Chapter 11 Case after substantial consummation of the Plan.

42.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

43.     "Fognani" means Fognani & Faught, PLLC, a Colorado professional limited liability company.

44.     "Haynes and Boone" means Haynes and Boone, L.L.P.

45.      "Holder" means the beneficial holder of any Claim or Interest.

46.     "Impaired" means a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

47.     "Insider" has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

48.     "Insider Convertible Debt Claims" mean the Claims held by Edward Brogan and Joseph Marchal, current officers or directors of the Debtor, for funds loaned to the Debtor.

49.     "Interest" means any: (a) Equity Security; (b) Claim of the type described in and subject to subordination pursuant to Section 510(b) of the Bankruptcy Code relating to any Equity Security; and (c) partnership, limited liability company, or similar interest.

50.     "Lanesborough" means Lanesborough, LLC, a Colorado limited liability company.

51.     "Onsager" means Onsager Fletcher Johnson LLC, a Colorado limited liability company.

52.     "Person" means an individual, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agreed or political subdivision thereof) or other entity of any kind.

53.     "Petition Date" means February 21, 2018.

54.     "Plan" means this Chapter 11 plan of reorganization for the Debtor and all exhibits annexed hereto or referenced herein, as the same may be amended, modified or supplemented from time to time.

55.     "Pro Rata" means, at any time, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims in such Class, unless the Plan provides otherwise.

56.     "Proof of Claim" means a proof of Claim filed in the Claims register of the Bankruptcy Court in the Chapter 11 Case.

57.     "Professional" means a Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

58.     "Professional Fee Claim" means a Claim: (a) for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330 or 331 of the Bankruptcy Code of a professional person retained by order of the Bankruptcy Court; and (b) of any professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Section 503(b) of the Bankruptcy Code.

59.     "Released Parties" means the Committee and the members thereof solely in their capacity as such, and their successors and assigns, Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other Professionals, in each case in their capacity as such, and only if serving in such capacity; and the Debtor's officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investments bankers, consultants, representatives, and other Professionals, in each case in their capacity as such, and only if serving in such capacity.

60.     "Representative" means, with respect to any entity, any successor, predecessor, officer, director, partner, employee, agent, attorney, advisor, investment

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity, serving on or after the Petition Date.

61. "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in the Chapter 11 Case pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b) as such schedules or statements may be amended or supplemented from time to time in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure or orders of the Bankruptcy Court.

62. "Secured Claim" means a Claim that is secured by a security interest in or Lien upon property, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such interest or lien as determined by a Final Order of the Bankruptcy Court pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor and the Holder of such Claim.

63. "SGS" means SGS Acquisition Company, Ltd., a foreign corporation based in Barbados.

64. "SGS Litigation" means the lawsuit commenced by SGS against the Debtor and others in the United States District Court for the District of Colorado, pending as Case No. 1:16-cv-2486, together with all claims, counterclaims, cross-claims and third-party claims raised in that case.

65. "SGS Litigation Claim" means all Claims of SGS asserted against the Debtor in the SGS Litigation, including but not limited to the Proof of Claim in the amount of $28.3 million filed in the Chapter 11 Case as Proof of Claim number 3-1.

66. "Titan" means Titan Mining Corporation, a British Columbia corporation.

67. "Titan Broker" means the broker selected by the Debtor who will be responsible for selling the Titan Common Stock in a manner that will maximize the sales proceeds and the balance in the Allowed Claims Distribution Fund.

68. "Titan Common Stock" means the 2,968,900 shares of common stock of Titan paid to the Debtor as partial consideration  for the purchase of the Balmat mine by Titan Mining (US) Corporation, a Delaware corporation.

69. "Titan Promissory Note" means the promissory note in the original principal amount of $3,000,000 with Titan as payor and the Debtor as payee.

70. "<u>Unsecured Claim</u>" means any Claim that is not secured by a security interest in or lien upon an Asset of the Debtor.

71. "<u>Unsecured Trade Creditor Claim</u>" means any Claim that is not an Aviano Netted Claim, a Balmat Litigant Claim, a Contingent or Barred Claim, or an Insider Convertible Debt Claim.

**C.** **<u>Rules of Interpretation.</u>**

1. <u>Captions and Headings</u>. Captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only, and are not intended to be a part of or to affect the interpretation of the Plan.

2. <u>Rules of Construction</u>. The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

3. <u>Computation of Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

# ARTICLE III

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

**A.** **<u>Introduction</u>**.

Claims, except for Administrative Claims, and Interests are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code; Administrative Claims (including Professional Fee Claims) have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that a Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**B.**       <u>Identification of Classes of Claims.</u>

Pursuant to Section 1122 of the Bankruptcy Code, Claims (other than Administrative Claims) and Interests are classified for all purposes, including voting on, confirmation of and distribution pursuant to this Plan, as follows:

| Class | Name | Status |
|---|---|---|
| 1 | Aviano Netted Litigation Claim | Unsecured, Impaired |
| 2 | Unsecured Trade Creditor Claims | Unsecured, Impaired |
| 3 | Balmat Litigant Claims | Unsecured, Impaired |
| 4 | Contingent or Barred Claims | Unsecured, Impaired, Deemed to Reject |
| 5 | Insider Convertible Debt Claims | Unsecured, Impaired, Votes Not Counted |
| 6 | Interests | Impaired, Entitled to Vote |

**C.**       <u>Elimination of Classes.</u>

Any Class of Claims that does not consist, as of the date of the Confirmation Hearing, of at least one Claim, whether or not such Claim is an Allowed Claim, or a Claim temporarily Allowed under Rule 3018 of the Bankruptcy Rules, shall be deemed deleted from this Plan for all purposes.

**ARTICLE IV**

**<u>TREATMENT OF CLASSES OF CLAIMS AND INTERESTS</u>**

**A.**       <u>Administrative Claims, Including Professional Fee Claims.</u>

1.    <u>Treatment of Administrative Claims</u>. The holder of every Allowed Administrative Claim will be paid, in full satisfaction of such Claim, (a) a single Cash payment in the Allowed amount of the Claim on the later of the Effective Date or the date on which the Administrative Claim becomes an Allowed Claim, if an objection has been filed to the Claim; or (b) as otherwise agreed in writing by the holder of the Allowed Claim or ordered by the Bankruptcy Court. Every Allowed Administrative Claim for an expense of operation of the Debtor incurred in the ordinary course of such operations will be paid fully and in Cash in the ordinary course of business (including any payment terms applicable to any such expense). Administrative Claims will be paid from available Cash and from money in the Allowed Claims Distribution Fund and are <u>unimpaired</u> pursuant to the Plan and Bankruptcy Code § 1124.

2.    Deadline for Filing Claims for Administrative Expenses.  All requests for payment of an Administrative Claim must be filed with the Bankruptcy Court and served upon counsel for the Debtor on or before forty-five (45) days after the Effective Date. Any request for payment of an Administrative Claim pursuant to this Section that is not timely filed and served shall be disallowed automatically without the need for any objection by the Debtor.  In the event the Debtor objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

**B.    Plan Classes And Treatment.**

1.    Treatment of Class 1 Aviano Netted Claim.  The Aviano Netted Claim consists of the claims asserted by Aviano in Claim No. 3-1 in the amount of $118,211,597 against the Debtor, less the amount of the Aviano Indemnification Claims.  The Debtor disputes the amount and validity of the Aviano Litigation Claims, and thus the Aviano Netted Claim.  The Debtor will file a formal objection and will ask the Bankruptcy Court to determine the Allowed amount, if any, of the Aviano Litigation Claims, the Aviano Indemnification Claims and the Aviano Netted Claim.

If the Holder of the Aviano Netted Claim votes to accept the Plan, the Debtor and Aviano will agree to an Allowed Aviano Litigation Claim in the aggregate amount of $715,167.12, reflecting principal of $600,000.00 and accrued interest of $115,167.12, to be paid in full satisfaction of the Aviano Litigation Claims.  This Allowed Claim, less the amounts of the Aviano Indemnification Claims, whether determined by the Bankruptcy Court or agreed upon by the parties, would be eligible to participate in distributions from the Allowed Claims Distribution Fund commencing on the first Distribution Date after the amount of the Aviano Netted Claim is determined.  If the Holder of the Aviano Netted Claim votes to reject the Plan or objects to confirmation of the Plan, the Bankruptcy Court will determine the Allowed amount, if any, of the Aviano Litigation Claims and the Aviano Indemnification Claims.  Aviano would not become eligible to participate in payments from the Allowed Claims Distribution Fund until after these amounts are determined and Allowed by the Bankruptcy Court.  No amounts will be reserved or set aside for payment of the Aviano Netted Claim until such Claim becomes Allowed.

The Aviano Netted Claim is **impaired**.

2.    Treatment of Class 2 Unsecured Trade Creditor Claims.  The Class 2 Unsecured Trade Creditor Claims are those Claims: (a) that are not listed as "Disputed," "Contingent" or "Unliquidated" on the Debtor's Schedules, and (b) to which the Debtor has not filed an objection on or before the Confirmation Date.  The Debtor will pay Allowed Unsecured Trade Creditor Claims in full and in Cash within thirty (30) days after the Effective Date of the Plan. The Class 2 Unsecured Trade Creditor Claims are **impaired** under the Plan.

3. <u>Treatment of Class 3 Balmat Litigant Claims</u>. The Class 3 Balmat Litigant Claims are Claims held by Persons, other than Aviano, who are parties to the Aviano Litigation or the SGS Litigation. The Debtor disputes the amount and validity of the Balmat Litigant Claims. The Debtor will file formal objections and will ask the Bankruptcy Court to determine the Allowed amount, if any, of the Balmat Litigant Claims.

The Bankruptcy Court will determine the Allowed amount, if any, of the Balmat Litigant Claims, and only if, when and to the extent that the Balmat Litigant Claims become Allowed Claims, will Holders of Balmat Litigant Claims become eligible to participate in the Allowed Claims Distribution Procedure. No amounts will be reserved or set aside for payment of the Balmat Litigant Claims before such Claims become Allowed.

The Balmat Litigant Claims are **impaired**.

4. <u>Treatment of Class 4 Contingent or Barred Claims</u>. The Class 4 Contingent or Barred Claims are Claims that are not allowable against the Debtor for one of the following reasons: (a) they are contingent claims that should be brought against another entity; (b) they are time-barred; (c) they are not ripe; (d) they are contractual Claims where a condition to payment has either not been satisfied or has been breached; or (e) they were fully satisfied by payments of Cash or stock prior to the Petition Date. To the extent any Holder(s) of Contingent or Barred Claims file Proofs of Claim against the Debtor's Estate, the Debtor will object to those Claims and ask that they be designated as "contingent or barred" and treated under Class 4 of the Plan. The Debtor proposes that all Class 4 Contingent or Barred Claims be disallowed against the Debtor's Estate and receive nothing more on account of those Claims. If, when and to the extent any of the Class 4 Claims become Allowed Claims, they will be paid *pro rata* in installments from the Allowed Claims Distribution Fund on each Distribution Date that occurs after the date such Claim becomes Allowed. Class 4 Claims are **impaired** under the Plan and the Holders of Class 4 Claims are deemed to have rejected the Plan.

5. <u>Treatment of Class 5 Insider Convertible Debt Claims</u>. The Class 5 Insider Convertible Debt Claims consist of the Claims of Edward Brogan and Joseph Marchal, current officers or directors of the Debtor. Payment on the Class 5 Insider Convertible Debt Claims will be paid from the Allowed Claims Distribution Fund in accordance with the Allowed Claims Distribution Procedure, after all Claims in Class 2 have been paid in full. Class 5 Claims are **impaired** under the Plan, but the votes of the Holders of Class 5 Insider Convertible Debt Claims will not count for purposes of determining acceptances of the Plan.

6. <u>Treatment of Class 6 Interests</u>. The Holders of Class 6 Interests will not receive anything on account of their Interests until all Disputed Claims have been

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

adjudicated and all Allowed Claims have been paid in full in accordance with the Allowed Claims Distribution Procedure. If all Allowed Claims have been paid in full, any remaining Cash in the Allowed Claims Distribution Fund will be distributed to Holders of Interests in the Debtor in accordance with the preferences established upon the issuance of each class of stock in the Debtor.

If, after the liquidation of all of the Titan Common Stock, there is insufficient Cash to pay all Allowed Claims in full, all Interests in the Debtor will be canceled, and the Holders of unpaid Allowed Claims will receive common stock in the Debtor, with newly issued shares of the Debtor's common stock to be apportioned *pro rata*, with each Holder's share calculated by dividing the amount of the Holder's unpaid Allowed Claim by the total amount of all unpaid Allowed Claims.

# ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    General Provisions.

Prior to, and on the occurrence of, the Effective Date, Debtor shall be responsible for ensuring that all conditions to the effectiveness of this Plan are fulfilled and for fulfilling the requirements set forth in this Plan. The Plan will be implemented upon the occurrence of the Effective Date of the Plan. The Debtor is the proponent of this Plan, within the meaning of Section 1129 of the Bankruptcy Code. The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### B.    Collection of the Titan Promissory Note.

The Distribution Agent will collect the Titan Promissory Note, deposit amounts collected into the Allowed Claims Distribution Fund, and pay the balance *pro rata* to Holders of Allowed Claims on the Distribution Dates, in accordance with the Allowed Claims Distribution Formula.

### C.    The Titan Common Stock Liquidation

Creditors, as and when they become Holders of Allowed Claims, will be paid in full by the Distribution Agent in *pro rata* installments on each Distribution Date pursuant to the Allowed Claims Distribution Procedure over a period of five and one-half (5 1/2) years after the Effective Date (the "Marketing Period"). The Debtor will appoint the Titan Broker to sell the Titan Common Stock in amounts and at times designed to maximize the

proceeds from the sales. It is anticipated that the stock will be sold gradually over the Marketing Period in order not to saturate the market and drive the sales price down.

Prior to the Confirmation Hearing, the Debtor will select and identify the Titan Broker proposed to liquidate the Titan Common Stock, and prepare and make available the contract by which the Titan Broker will be employed and compensated.

## ARTICLE VI

## PROCEDURES FOR RESOLVING
## DISPUTED CLAIMS AND INTERESTS

**A.**     **Allowance of Claims and Interests.**

After the Effective Date, the Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Interest immediately prior to the Effective Date.

**B.**     **Claims and Interests Administration Responsibilities.**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Debtor shall have the sole authority (1) to file, withdraw, or litigate to judgment, objections to Claims or Interests; and (2) to settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court.

**C.**     **Time to File Objections to Claims.**

Objections to the allowance of any Claim may be filed by any party in interest no later than: (i) forty-five (45) days after the Effective Date; or (ii) on such later date as may be set by order of the Bankruptcy Court after notice and a hearing. Only the Debtor may request an extension of the 45-day deadline to object to Claims provided herein.
**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE BAR DATE SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS ON OR BEFORE THE CONFIRMATION HEARING SUCH LATE CLAIM HAS BEEN DEEMED TIMELY FILED BY A BANKRUPTCY COURT ORDER.**

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

**D.** **Offer of Judgment.**

The Debtor is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Fed. R. Civ. Pr. 68 shall apply to such offer of judgment. To the extent the Holder of a Claim or Interest must pay the costs incurred by the Debtor after the making of such offer, the Debtor is entitled to setoff such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE VII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.** **Distributions on Account of Claims Allowed as of the Effective Date.**

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, initial Distributions under the Plan on account of Claims Allowed on or before the Effective Date in Classes 1, 3, 4 and 5 shall be made on the first Distribution Date; *provided, however,* that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case or assumed by the Debtor prior to the Effective Date shall be paid in accordance with the terms and conditions of any controlling agreement, course of dealing, course of business, or industry practice, and (2) Allowed Professional Fees Claims and Allowed Class 2 Claims, unless otherwise agreed, shall be paid in accordance with Articles IV.A.1 and IV.B.2 of this Plan, respectively.

**B.** **Distribution on Account of Claims Allowed after the Effective Date.**

1.   <u>Payments and Distributions on Disputed Claims</u>. Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made on the periodic Distribution Date that is at least thirty (30) days after the Disputed Claim becomes an Allowed Claim.

2.   <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and all Claims of such Holder have been Allowed.

## C.  Delivery of Distributions.

Except as otherwise provided in the Plan, and notwithstanding any authority to the contrary, Distributions to Holders of Allowed Claims shall be made to Holders by the Distribution Agent:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is filed or if the Debtor has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Distribution Agent; at the addresses reflected on the Schedules if no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf.  The Debtor and the Distribution Agent shall not be liable on account of any Distributions under the Plan, except for gross negligence or intentional misconduct.

## D.  Fractional, De Minimis, Undeliverable, and Unclaimed Distributions.

1.  _Fractional Distributions._  Notwithstanding any other provision of the Plan to the contrary, the Distribution Agent shall not be required to make Distributions or payments of fractions of dollars.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment by the Distribution Agent shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

2.  _De Minimis Distributions._  The Distribution Agent shall not have any obligation to make a Distribution on account of an Allowed Claim if (1) the amount to be distributed to the Holder of an Allowed Claim on the particular Distribution Date does not constitute a final Distribution to such Holder and is or has an economic value of less than $50 or (2) the aggregate amount of all Distributions authorized to be made on that Distribution Date have an economic value less than $10,000, unless such Distribution is a final Distribution.

3.  _Undeliverable Distributions._  If any Distribution to a Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable, no further Distributions shall be made to such Holder unless and until such Distribution Agent is notified in writing of such Holder's then-current address, at which time all currently due missed Distributions shall be made to such Holder on the next Distribution Date  Undeliverable Distributions shall remain in the possession of the Debtor until such time as a Distribution becomes deliverable, or such Distributions shall be reallocated to the Holders of other Claims in the same Class on a _pro rata_ basis.

4.    Reversion.  Any Distribution under the Plan that is unclaimed for a period of six (6) months after the Distribution Date on which such Distribution is initially attempted shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such unclaimed distribution shall be reallocated to other Holders of Claims *pro rata*. Upon such reallocation, the Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary.

**E.    Manner of Payment Pursuant to the Plan.**

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Debtor by check or by wire transfer.  Checks issued by the Distribution on account of Allowed Claims shall be null and void if not negotiated within 90 days after issuance, but may be reissued upon written request of the recipient until the Distribution is reallocated to the Holders of other Claims.

## ARTICLE VIII

### EFFECT OF CONFIRMATION OF PLAN

**A.    Post-Confirmation Status of Debtor.**

The Debtor and its wholly owned subsidiaries shall continue to exist after the Effective Date as corporate entities with all the powers of a corporation pursuant to the laws of the State of Nevada and pursuant to their respective certificates of incorporation or formation, bylaws or other formation documents in effect prior to the Effective Date. There are no anticipated changes to the Debtor's existing officers and directors at this time.

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein or in a Confirmation Order, on the Effective Date, all Assets in the Estate and all causes of action shall vest in the reorganized Debtor free and clear of all liens, Claims, charges or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests or causes of action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**B.        Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, after the Confirmation Date, the Debtor will retain and may enforce all rights to commence and pursue, as

appropriate, any and all causes of action, whether arising before or after the Petition Date, and the Debtor's rights to commence, prosecute, or settle such causes of action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor may pursue such causes of action, as appropriate, in accordance with the best interests of the Debtor. **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any cause of action against them as any indication that the Debtor will not pursue any and all available causes of action against them. The Debtor expressly reserves all rights to prosecute any and all causes of action against any Person, except as otherwise expressly provided in the Plan.**

C.    **Discharge of Claims and Termination of Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights, and treatments that are provided in the Plan shall be in complete satisfaction, discharge, and release, as of the Effective Date, of all Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on such Claims or Interests from and after the Petition Date, whether known or unknown, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, and regardless of whether:  (1) a Proof of Claim or Interest based upon such debt, right, or Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.

D.    **Releases by the Debtor.**

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties to facilitate the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, on and after the Effective Date, the Released Parties are deemed released and discharged by the Debtor and the Estate from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise that the Debtor or the Estate would have been legally entitled to assert in its own right or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and

Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Released Party reasonably believed to be in the best interest of the Debtor (to the extent such duty is imposed by applicable non-bankruptcy law) where such failure to perform constitutes willful misconduct or gross negligence.

## C.      Exculpation.

On the Effective Date of this Plan, no Person who was serving as an officer, director or employee of the Debtor on the Petition Date, acting in their capacity as such, nor the Debtor, the Debtor's Estates, or any of the foregoing's respective affiliates, members, advisors, agents or Professionals (collectively, the "Exculpated Parties") shall have or incur any liability to any Person for any act or omission taken or omitted on or after the Petition Date in connection with, related to, or arising out of, the preparation, filing, negotiation or formulation of this Plan, the pursuit of confirmation of this Plan including without limitation, the consummation of this Plan or the implementation or administration of this Plan or the property to be distributed under this Plan, and any such Claim or cause of action shall be deemed released, except for any Claim or cause of action arising from the fraud or willful misconduct of any Exculpated Party.  In all respects, the Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; *provided, however*, that nothing in this Plan shall, or shall be deemed to, release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' obligations or covenants arising pursuant to this Plan or the Confirmation Order.

## D.      Releases by Holders of Claims and Interests.

Except for any obligation, claim, cause of action, or liability arising expressly under the Plan or reserved by any Person pursuant to the Plan, on and after the Effective Date, Holders of Claims and Interests shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Debtor and the Released Parties from any and all Claims, Interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person would have been legally entitled to assert based on or relating to, or in any manner arising from, in

Fennemore Craig, P.C.

Phoenix

NMARCH/13949519.6/047399.0001

whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and Disclosure Statement, or related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date with respect to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of the Debtor or of a Released Party that constitutes a failure to perform the duty to act in good faith, with the care of an ordinarily prudent person and in a manner the Debtor or the Released Party reasonably believed to be in the best interests of the Debtor (to the extent such duty is imposed on such Released Party by applicable non-bankruptcy law) where such failure to perform constitutes willful miscount or gross negligence.

**E.    Injunction.**

As of the Effective Date, except as otherwise provided in this Plan, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, or pursuing any cause of action or Claim, or effectuating any setoff, whether directly, derivatively or otherwise against the Debtor, any of the Released Parties or any of the Exculpated Parties, on account of or respecting any Claims, debts, causes of action, rights or liabilities released or discharged pursuant to this Plan, except to the extent expressly permitted under this Plan.

### ARTICLE IX
### CONDITIONS TO EFFECTIVENESS OF THE PLAN

**A.    Conditions Precedent to Effectiveness.**

The following are conditions precedent to the occurrence of the Effective Date:

1.    The Confirmation Order approves this Plan in all respects.

2.    The Confirmation Order has not been stayed by any court order or otherwise.

3.    No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made or, if made, remains pending.

4. All documents necessary to implement the transactions contemplated by this Plan are made in form and substance reasonably acceptable to Debtor and the applicable parties.

5. Cash in an amount sufficient to pay in full the Professional Fee Claims and the Unsecured Trade Creditor Claims has been deposited with the Debtor.

**B. Waiver of Conditions.**

Debtor, in its sole discretion, holds the right, without the need for the approval by the Bankruptcy Court or any other party, to waive or limit any of the Conditions to Effectiveness and allow this Plan to become effective and the Effective Date to occur.

## ARTICLE X

## MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

**A.    Modification of the Plan.**

In addition to its modification rights under §1127 of the Bankruptcy Code, the Debtor may amend or modify this Plan at any time prior to Confirmation without leave of the Bankruptcy Court, subject to the requirements of Sections 1122, 1123, and 1125 of the Bankruptcy Code. The Debtor may propose amendments and/or modifications of this Plan at any time after Confirmation with leave of the Bankruptcy Court and upon notice to Creditors and holders of Interests. After Confirmation of the Plan, the Debtor may, with approval of the Bankruptcy Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or Confirmation Order.

**B.    Withdrawal of Plan.**

The Debtor reserves the right to revoke or withdraw the Plan before Confirmation and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if Confirmation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtor or any other Person; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Person.

# ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the confirmation of the Plan, the Bankruptcy Court shall retain exclusive jurisdiction for all matters arising out of, or related to, the Chapter 11 Case and the Plan, including, but not limited to, all of the following:

### A. In General.

The Bankruptcy Court shall retain jurisdiction to determine the allowance and payment of any Claims upon any objection thereto (or other appropriate proceedings) by the Debtor, or by any other party in interest entitled to proceed in that manner. As part of such retained jurisdiction, the Bankruptcy Court shall continue to determine the allowance of Administrative Claims and any requests for payments thereof, including Chapter 11 Professional fees and costs that are Administrative Claims.

### B. Plan Disputes.

The Bankruptcy Court shall retain jurisdiction to determine any disputes that may arise regarding the interpretation, implementation, or enforcement of any provisions of the Plan, the Confirmation Order or agreements, documents or instruments executed in connection with the Plan; and to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order.

### C. Further Orders.

The Bankruptcy Court shall retain jurisdiction to facilitate the consummation of the Plan by entering, consistent with the provisions of the Plan, any further necessary or appropriate order(s) regarding the enforcement of the Plan and any provision(s) thereof, or to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated. The Bankruptcy Court shall also retain jurisdiction to enforce orders previously entered by the Bankruptcy Court.

### D. Other Claims.

The Bankruptcy Court shall retain jurisdiction to adjudicate any causes of action or other proceedings presently pending or otherwise referenced here or elsewhere in the Plan, including, but not limited to, any pending adversary proceedings, applications, and contested matters regarding the initiation, prosecution, enforcement, compromise or settlement of the causes of action in the Debtor' Estates, and the adjudication of any and

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

all "core proceedings" under 28 U.S.C. § 157(b) which may be pertinent to the Chapter 11 Case.

**E.      Enforcement and Implementation of Plan.**

The Bankruptcy Court shall retain jurisdiction to enforce or implement any provisions of the Plan and any and all documents relating to the Plan including, but not limited to: (1) resolving disputes arising from or relating to distributions under the Plan, (2) considering any modifications to the Plan, (3) curing any defect or omission, and (4) reconciling any inconsistency in any Bankruptcy Court order, including the Confirmation Order.  The Court may also issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with implementation or enforcement of the Plan.

**F.      Appeals.**

In the event of any appeal of the Confirmation Order, and provided that no stay of the effectiveness of such Confirmation Order has been entered, the Bankruptcy Court shall retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding disbursements under the Plan or the consummation thereof as may be necessary to effectuate the terms of the Plan.

**G.      Tax Issues.**

The Bankruptcy Court shall retain jurisdiction to adjudicate and determine any issues that relate to the Chapter 11 Case, and any governmental unit's Claim with respect to any tax, or any fine, interest or penalty relating to a tax, as well as approving any settlements between the Debtor and any taxing authority.

**H.      Settlement Agreement Disputes.**

The Bankruptcy Court will retain jurisdiction to determine any dispute which may arise regarding the enforcement of any settlement or compromise related to the Debtor's Chapter 11 Case.

**I.      Professional Fees and Costs.**

The Bankruptcy Court will retain jurisdiction to determine any and all issues that relate to the payment of Chapter 11 Professionals in the Debtor's Chapter 11 Cases.  Any professional fees incurred by the Chapter 11 Professionals after the Confirmation Date shall be payable in the ordinary course of the Debtor's business without the need to seek or obtain Bankruptcy Court approval.

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

**J.    Closing of Case.**

The Bankruptcy Court retains exclusive jurisdiction to enter an order or Final Decree concluding or closing the Bankruptcy Case.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

**A.    Vesting.**

As of the Effective Date of the Plan, the Debtor shall retain and be vested with all of the Assets of the Estate(s).  All Assets retained shall be free and clear of all liens, claims, and interest of creditors and parties-in-interest, except as specifically provided in the Plan.

**B.    Severability and Reformation.**

It is the intention of Debtor to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan.  Therefore, if any provision of the Plan is determined by the Bankruptcy Court to be contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan, if it cannot be reformed or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Debtor from modifying the Plan in any manner whatsoever in accordance with and as set forth in the Plan.  Pursuant to any ruling by the Bankruptcy Court regarding the subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or inconsistent provisions of the Plan.

**C.    Successors and Assigns.**

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party-in-interest.

**D.    Payment of Statutory Fees and Filing of Quarterly Reports.**

All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at or in conjunction with the Confirmation Hearing, will be paid on or before the

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001

Effective Date and, thereafter, in accordance with applicable bankruptcy law. All quarterly reports of disbursements required to be filed by applicable bankruptcy law will be filed in accordance with applicable bankruptcy law.

**E.      Notices.**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage-prepaid, first-class mail, hand-delivery, facsimile, or email.

**F.      Governing Law.**

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

**G.      Special Tax Issues.**

Pursuant to Section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of Assets contemplated by the Plan, shall not be subject to any stamp.

**H.      Reservation of Rights.**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**I.      Closing Of Case.**

Until the Chapter 11 Case is officially closed, the Debtor will be responsible for filing post-Confirmation reports required by the United States Trustee for the applicable assets and distributions and paying the quarterly post-Confirmation fees associated therewith of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under section 1930 of title 28, as

determined by the Bankruptcy Court at the hearing on confirmation of the Plan, will be paid, in Cash, on the Effective Date.

**J.     Conflicts between Plan and Confirmation Order.**

In the event the terms of the Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

DATED this 21st day of June, 2018.

**STAR MOUNTAIN RESOURCES, INC.**

By:  _/s/ Joseph Marchal_

Chief Executive Officer

Prepared and Submitted by Counsel:

**FENNEMORE CRAIG PC**

By:  _/s/ Nancy J. March_
        Gerald L. Shelley
        Nancy J. March

FENNEMORE CRAIG, P.C.

PHOENIX

NMARCH/13949519.6/047399.0001