**FENNEMORE CRAIG, P.C.**
Gerald L. Shelley (No. 010453)
Nancy J. March (No. 012802)
2394 East Camelback Road
Suite 600
Phoenix, AZ 85016-3429
Telephone: (602) 916-5000
Email: gshelley@fclaw.com
    nmarch@fclaw.com

*Attorneys for Debtor*
*Star Mountain Resources, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| STAR MOUNTAIN RESOURCES, INC. *f/d/b/a* Jameson Stanford Resources Corp., *f/d/b/a* MyOtherCountryClub.com, | Case No: 2:18-bk-01594-DPC |
| Debtor. | |

## CHAPTER 11 PLAN OF LIQUIDATION

## FILED BY DEBTOR STAR MOUNTAIN RESOURCES, INC.

## DATED APRIL 29, 2019

## ARTICLE I

## <u>INTRODUCTION</u>

Debtor and debtor in possession STAR MOUNTAIN RESOURCES, INC. (the "**Debtor**") submits the following Chapter 11 Plan of Liquidation (the "**Plan**"). The Debtor is the "**Plan Proponent**" of the Plan within the meaning of Bankruptcy Code Section 1129. Reference is made to the "*Disclosure Statement in Support of Joint Plan* (the

Fᴇɴɴᴇᴍᴏʀᴇ Cʀᴀɪɢ, P.C.
Pʜᴏᴇɴɪx
14818417.1

"**Disclosure Statement**") for, among things, (i) a discussion of the Debtor's history and property, and (ii) a summary and analysis of the Plan. All Holders of Claims or Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and the Plan before voting to accept or reject the Plan. To the extent that the Plan is inconsistent with the Disclosure Statement, the Plan will govern.

## OVERVIEW

The Plan provides for payment to the Debtor's creditors and current shareholders through a Liquidating Trust established to liquidate the Debtor's current assets and distribute the proceeds to Holders of Allowed Claims and Interests in accordance with the priorities set forth in the Bankruptcy Code and the Plan. The Debtor's corporate entity will be maintained under the sole auspices of a Liquidating Trustee for a period of time sufficient for the Liquidating Trustee to complete the liquidation process, including any and all litigation.

ALL CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO CONSULT THE DISCLOSURE STATEMENT THAT ACCOMPANIES THE PLAN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. AS ORDERED BY THE BANKRUPTCY COURT, BALLOTS TO ACCEPT OR REJECT THE PLAN MUST BE CAST BY _____, WHICH MEANS THAT BALLOTS MUST BE **RECEIVED** BY COUNSEL FOR THE DEBTOR AS PROVIDED IN THE BALLOT ACCOMPANYING THE PLAN. AMONG OTHER INFORMATION, THE DISCLOSURE STATEMENT CONTAINS INFORMATION CONCERNING THE DEBTOR, THE HISTORICAL BACKGROUND OF THE CHAPTER 11 CASE AND THE PREPETITION PERIOD, FINANCIAL ISSUES WITH REGARD TO THE

DEBTOR AND A SUMMARY AND ANALYSIS OF THE PLAN. NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH, HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR AUTHORIZED PURSUANT TO THE BANKRUPTCY CODE FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

### ARTICLE II

### DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.** **Scope of Definitions; Rules of Construction**

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings hereinafter stated. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules (hereinafter defined), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number. The masculine gender shall include the feminine, and the feminine gender shall include the masculine. Moreover, for purposes of the Plan, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable, unless the context otherwise requires.

The defined terms stated in Article II also are substantive terms of the Plan; and Article II will be deemed incorporated throughout the rest of the Plan to convey the substantive provisions included in the defined terms.

FENNEMORE CRAIG, P.C.

PHOENIX

## B. **Definitions**

1. "<u>Administrative Claim</u>" means any Claim under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Assets of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation and reimbursement of expenses allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the Debtor under Section 1930 of Chapter 123 of Title 28 of the United States Code, all as may arise prior to the Confirmation Date.

2. "<u>Allowed</u>", with respect to Claims and Interests, means: (a) any Claim or Interest, proof of which was timely filed, or not required to be filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable Final Order, or late-filed with leave of the Bankruptcy Court; (b) any Claim or Interest that is listed in the Schedules as of the Effective Date as not disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely filed; provided, however, that no objection to the allowance of the Claim or Interest has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest shall have been Allowed for distribution purposes only by a Final Order. Any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely filed, is not considered Allowed and shall be expunged without further notice. Notwithstanding this definition, certain Claims and Interests have been deemed Disallowed by the provisions of the Plan.

3. "<u>Asset(s)</u>" means any asset, property or interest therein of the Estate as provided for under Section 541 of the Bankruptcy Code and includes, without limitation, all assets disclosed and undisclosed, known or unknown, or that may be discovered; Cash on hand and all deposits; the Titan Note; the Titan Stock; any subsidiaries or affiliated entities; the corporate shell, any insurance policies; and all existing or potential claims and causes of action, whether previously identified, brought/filed or otherwise.

4. "<u>Ballots</u>" means each of the ballots distributed with the Disclosure Statement to Holders of Impaired Claims entitled to vote on this Plan, for the purpose of indicating an acceptance or rejection of this Plan.

5. "<u>Balmat Mining Assets</u>" means Balmat Holding Corporation ("Balmat") and its wholly owned subsidiary, St. Lawrence Zinc Company, LLC, ("SLZ") the owner of the mining property located in upstate New York known as the Balmat Zinc Mine.

6.      "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ et seq., and as such Title has been, or may be, amended from time to time.

7.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Arizona or such other court as may have jurisdiction over the Chapter 11 Cases.

8.      "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings herein, and the Local Rules of Bankruptcy Procedure for the District of Arizona, as applicable to the Chapter 11 Cases or proceedings therein.

9.      "Bar Date" means July 9, 2018, the last day for filing a proof of claim in the bankruptcy.

10.      "Business Day" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

11.      "Cash" means legal tender of the United States or equivalents thereof.

12.      "Causes of Action" means any and all claims, actions, proceedings, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims (as defined in Bankruptcy Code § 101(5)), whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, non-matured, disputed, undisputed, secured or unsecured whether identified, filed or prosecuted to date or not and whether asserted or assertable directly or derivatively, in law, equity or otherwise. Any lawsuit commenced pursuant to Bankruptcy Code §§ 544, 547, 548, 549, 550, 551and/or 553 is included within this definition.

13.      "Chapter 11 Case" means the bankruptcy case for the Debtor pending before the Bankruptcy Court under Case No. 2:18-bk-1594-DPC.

14.      "Claim" means any claim against the Debtor, whether or not asserted, as defined in Section 101(5) of the Bankruptcy Code.

15.      "Claim Objection Deadline" means sixty (60) days after the Confirmation Date of the Plan, as such date may be extended by order of the Bankruptcy Court, which is the last day for filing objections to Claims as provided in Article V of the Plan.

16.      "Class" means a category of Claims or Interests, as described in Article III below.

17. "Committee" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

18. "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

19. "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

20. "Confirmation Hearing" means the hearing held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be continued from time to time.

21. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

22. "Creditor" means any Person who holds a Claim against the Debtor.

23. "Debtor" means Star Mountain Resources, Inc., which is the subject of this Chapter 11 Case.

24. "Disallowed" means a Claim or Interest or any portion thereof that: (a) has been disallowed or expunged by the provisions of this Plan or a Final Order; (b) has been withdrawn, in whole or in part, by the holder thereof or by agreement with the Debtor; or (c) as to which no proof of Claim has been timely filed or is deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order.

25. "Disclosure Statement" means the disclosure statement with respect to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as it may be altered, amended, supplemented or modified from time to time, and distributed in accordance with Sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rule 3018.

26. "Disputed Claim" means any Claim not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court: (a) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court; (b) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed; (c) that is disputed in accordance with the provisions of this Plan; or (d) as to which the Debtor or other party in interest has interposed a timely objection or request for estimation in accordance with the

Bankruptcy Code, the Bankruptcy Rules and any order of the Bankruptcy Court, or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

27. "Disputed Claims Reserve" means the reserve of Cash established and maintained by the Liquidating Trustee to pay Disputed Claims upon allowance by the Bankruptcy Court.

28. "Distribution" means any payment of Cash or property required under the Plan.

29. "Effective Date" means the date on which the conditions set forth in Article VI below have been satisfied.

30. "Emerged Debtor" means the former Debtor entity after the Effective Date that will be wholly owned by the Liquidating Trust.

31. "Equity Security" means all issued, unissued, authorized or outstanding shares of common stock or preferred stock of the Debtor, together with any warrants, options or contractual rights to purchase or acquire any such securities at any time, and all rights arising with respect thereto.

32. "Estate" means the estate of the Debtor in the Chapter 11 Case, created pursuant to Section 541 of the Bankruptcy Code.

33. "Existing Common Stock" means shares of common stock in the Debtor authorized and issued as of the Record Date.

34. "Existing Preferred Stock" means preferred stock issued to Debtor's shareholders as of the Record Date.

35. "Final Decree" means an order entered by the Bankruptcy Court closing the Chapter 11 Case after substantial consummation of the Plan.

36. "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

37. "Holder" means the beneficial holder of any Claim or Interest.

38.    "Impaired" means a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

39.    "Insider" has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

40.    "Interest" means any Equity Security.

41.    "Litigation Insurance Fund" means the maximum of $250,000 funded by the Debtor's insurance company to pay for investigative costs related to the Causes of Action.

42.    "Liquidating Trust" means the grantor trust established on the Effective Date pursuant to the Liquidating Trust Agreement.

43.    "Liquidating Trust Assets" means the Assets transferred to the Liquidating Trust on the Effective Date.

44.    "Liquidating Trust Agreement" means the document executed by the Liquidating Trustee and the Debtor on the Effective Date establishing the Liquidating Trust.

45.    "Liquidating Trust Fund" means the Debtor's Cash transferred to the Liquidating Trust on the Effective Date and all proceeds derived from the liquidation of the Assets.

46.    "Liquidating Trustee" means Jared Parker or his successor appointed in accordance with the Plan and the Liquidating Trust Agreement.

47.    "Person" means an individual, partnership, limited liability company, trust, incorporated or unincorporated association, joint venture, joint stock company, government (or an agreed or political subdivision thereof) or other entity of any kind.

48.    "Petition Date" means February 21, 2018.

49.    "Plan" means this Chapter 11 plan of liquidation for the Debtor and all exhibits annexed hereto or referenced herein, as the same may be amended, modified or supplemented from time to time.

50.    "Pro Rata" means, at any time, the proportion that the amount of a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class, unless the Plan provides otherwise.

Case 2:18-bk-01594-DPC    Doc 326    Filed 04/29/19    Entered 04/29/19 10:06:42    Desc
Main Document    Page 8 of 27

51.     "Proof of Claim" means a proof of Claim filed in the Claims register of the Bankruptcy Court in the Chapter 11 Case.

52.     "Professional" means a Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

53.     "Professional Fee Claim" means a Claim: (a) for compensation and/or reimbursement of expenses pursuant to Sections 327, 328, 330 or 331 of the Bankruptcy Code of a professional person retained by order of the Bankruptcy Court; and (b) of any professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Section 503(b) of the Bankruptcy Code.

54.     "Record Date" means the date of the filing of this Plan.

55.     "Representative" means, with respect to any entity, any successor, predecessor, officer, director, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity, serving on or after the Petition Date.

56.     "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor in the Chapter 11 Case pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b) as such schedules or statements may be amended or supplemented from time to time in accordance with Rule 1009 of the Federal Rules of Bankruptcy Procedure or orders of the Bankruptcy Court.

57.     "Titan" means Titan Mining Corporation, a British Columbia corporation.

58.     "Titan Common Stock" means the 2,968,900 shares of common stock of Titan paid to the Debtor as partial consideration for the purchase of the Balmat mine by Titan Mining (US) Corporation, a Delaware corporation.

59.     "Titan Promissory Note" means the promissory note in the original principal amount of $3,000,000 with Titan as payor and the Debtor as payee.

60.     "Unsecured Claim" means any Claim that is not secured by a security interest in or lien upon an Asset of the Debtor.

## C. **Rules of Interpretation.**

1. <u>Captions and Headings</u>. Captions and headings to Articles and Sections of the Plan are inserted for convenience of reference only, and are not intended to be a part of or to affect the interpretation of the Plan.

2. <u>Rules of Construction</u>. The rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

3. <u>Computation of Time</u>. In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE III

## <u>CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS</u>

## A. **<u>No Classification of Administrative Claims</u>**

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims shall not be classified for purposes of voting on or receiving distributions under the Plan. All such Claims shall be treated separately as unclassified Claims on the terms set forth herein.

**<u>Treatment of Administrative Claims</u>**. Unless previously approved and paid, Allowed Administrative Claims will be paid, in full satisfaction of the Claim: (a) one cash payment in the Allowed amount of the Claim on the Effective Date or as soon thereafter as possible or after the claim is allowed if subject to Court approval; (b) in the ordinary course of business as the Claim matures; or (c) upon other less favorable terms as may be agreed upon by the holder of the Claim, or as ordered by the Bankruptcy Court. Payments will be made by the Liquidating Trustee from the Liquidating Trust Fund on a Pro Rata basis until paid in full.

FENNEMORE CRAIG, P.C.

PHOENIX

**B. Classification and Treatment of Claims and Interests That Are Classified**

For purposes of voting, distributions, and all confirmation matters, except as otherwise provided herein all Allowed Claims and Interests shall be classified and treated as follows.

1. **Class 1 – General Unsecured Creditors**.

Class 1 consists of the Allowed Claims of general unsecured creditors. Allowed Claims in this class will be paid on a Pro Rata basis from the Liquidating Trust Fund after the payment in full of all Allowed Administrative Claims. In the event sufficient funds are available to pay all Allowed Claims in this Class, the Liquidating Trustee will pay interest at a rate of 3 percent (3%) per annum. Class 1 is Impaired and is entitled to vote on the Plan.

2. **Class 2 – Preferred Equity Interests in the Debtor.**

Class 2 consists of the Allowed Interests of the Debtor's Current Shareholders holding Existing Preferred Stock. On the Effective Date, the Holder of a Class 2 Allowed Preferred Equity Interests shall receive a beneficial interest in the Liquidating Trust and shall be paid its Pro Rata share of the Liquidating Trust Fund in accordance with the Liquidating Trust Agreement and in accordance with the rights attributed to shares of Existing Preferred Stock after full payment of Allowed Class 1 Claims. Class 2 Interests shall be cancelled on the Effective Date. Class 2 is impaired and entitled to vote on the Plan.

3. **Class 3 – Common Equity Interests in the Debtor.**

Class 3 consists of the Allowed Interests of the Debtor's Current Shareholders holding Existing Common Stock. The Holder of a Class 3 Allowed Interest shall receive a beneficial interest in the Liquidating Trust and shall be paid its Pro Rata share of the

Liquidating Trust Fund in accordance with the Liquidating Trust Agreement and in accordance with the rights attributed to shares of Existing Common Stock after Classes 1 and 2 are paid in full. Class 3 Interests shall be cancelled on the Effective Date. Class 3 is Impaired and entitled to vote on the Plan.

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.** **Creation of Liquidating Trust and Appointment of Liquidating Trustee.**

On the Effective Date, a Liquidating Trust will be created pursuant to the Liquidating Trust Agreement (the terms of which are incorporated herein by reference) to liquidate all Liquidating Trust Assets, to pursue all Causes of Action, and to make all Distributions to Holders of Allowed Claims and Interests as required by the Plan. On the Effective Date, the Assets will be transferred to the Liquidating Trust and will be used to pay Allowed Claims and Interests after the payment or reservation for the expenses of administering the Liquidating Trust.

The Liquidating Trustee will be Jared Parker, a partner with the law firm of Parker Schwartz. Mr. Parker has served as a Court-appointed expert to investigate the Causes of Action. Mr. Parker will be deemed appointed as the Liquidating Trustee on the Effective Date, without further motion, application, notice, hearing or other order of the Court.

**B.** **Duties and Powers of Liquidating Trustee**

As more fully described in the Liquidating Trust Agreement, the Liquidating Trustee shall be appointed by the Court on the Effective Date and shall have the rights and

FENNEMORE CRAIG, P.C.
PHOENIX

powers of a debtor in possession under Bankruptcy Code section 1107, and such other rights, powers, and duties necessary, appropriate, prudent or advisable to effectuate the provisions of the Plan and the Liquidating Trust, including but not limited to, objecting to and resolving Claims; investigating, pursuing and resolving Causes of Action; and making Distributions to Creditors and Interest Holders. The Liquidating Trustee shall not be required to obtain any approvals from the Court, any court or governmental body and/or provide any notices under any applicable laws to implement the terms of the Plan in accordance with the Plan and the Liquidating Trust Agreement except as expressly set forth in the Plan and the Liquidating Trust Agreement.

The Liquidating Trustee may employ, without order of the Court, such counsel, financial advisors and other professionals selected by the Liquidating Trustee that are reasonably required to perform the Liquidating Trustee's responsibilities under the Plan.

**C.** **Compensation of the Liquidating Trustee and his Professionals**

With respect to the investigation of the Causes of Action, the Liquidating Trustee and his professionals will be compensated from the Litigation Insurance Fund. At no time may the Liquidating Trust Assets be used to pay the Liquidating Trustee or his professional for fees and costs related to the Causes of Action. Such fees and costs shall be paid on a contingency or other funding in the sole discretion of the Liquidating Trustee.

With respect to other tasks and duties, the Liquidating Trustee and his professionals shall be compensated from the Liquidating Trust Assets.

FENNEMORE CRAIG, P.C.

PHOENIX

**D.** <u>**Debtor's Corporate Existence and Governance.**</u>

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished. Additionally, as of the Effective Date, all Equity Interests shall be deemed cancelled and extinguished without any further action of any party; provided, however, that the Debtor shall issue one (1) share of common stock to the Liquidating Trust. The holders of, or parties to, the cancelled notes, membership interests, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to this Plan. The Liquidating Trustee shall serve as the Emerged Debtor's sole officer and director.

**E.** <u>**Transfer of All Books, Files and Records**</u>

Immediately after the Effective Date, the Debtor shall transfer all of its books, files, and records to the Liquidating Trustee and shall cause all of its representatives to transfer all of their books, files and records related to the Debtor to the Liquidating Trustee, including in all instances any attorney-client privileged and work product documents, correspondence, and communications, whether electronic or in hard copy form.

**F.** <u>**Transfer of Rights, Privileges and Authority**</u>.

On the Effective Date, the Liquidating Trustee on behalf of the Liquidating Trust shall succeed to and have all power, authority, rights, privileges and immunities previously held or asserted by the Debtor and its officers, directors and shareholders.

## G. **Dissolution of Debtor.**

Upon the final Distribution, the Debtor shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtor, and the Liquidating Trustee shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtor. All Causes of Action are preserved until the final Distribution.

## H. **Effectuating Documents; Further Transactions**

On the Effective Date, the Debtor and the Liquidating Trustee are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Upon transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtor's right, title and interest in the Liquidating Trust Assets and the Debtor and the Emerged Debtor will have no further rights or interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust.

## I. **Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the creation or transfer of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, and executed in connection with the liquidation of assets shall not be subject to any stamp tax, real estate tax or similar tax.

FENNEMORE CRAIG, P.C.

PHOENIX
14848417.1

15

**J.**     **Exemption from Securities Laws**

The creation of the Liquidating Trust and the issuance of beneficial interests in accordance thereto, and all other instruments, certificates, and other documents required to be issued or distributed pursuant to the Plan, (a) shall be authorized under Bankruptcy Code § 1145 as of the Effective Date without further act of action, except as may be required by the Amended corporate documents, and (b) shall be exempt pursuant to Bankruptcy Code § 1145 from registration under the Securities Act of 1933, as amended (and all rules and regulations promulgated thereunder), and under any state or local law (and all rules and regulations promulgated thereunder) requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.

### ARTICLE V

**A.**     **Deadline for Applications for Administrative Expenses**

Applications for Administrative Claims shall be filed no later than 30 days after the Effective Date.  If Administrative Claims are not timely filed in accordance with the Plan, they will be forever barred and may not be asserted in any manner; provided, however, that no request for payment shall be required with respect to Administrative Claims that have been paid previously or with respect to Administrative Claims for expenses incurred in the ordinary course of business, unless a dispute exists as to those expenses, or unless the provisions of the Bankruptcy Code require approval or allowance by the Bankruptcy Court as a precondition to payments being made on that expense.

## B.     Filing of Objections and Causes of Actions

The Liquidating Trustee shall have the exclusive right to file objections to Claims and to resolve any pending objections to Claims.  All rights and standing to prosecute or dismiss any pending objections to Claims shall be transferred to the Liquidating Trust and the Liquidating Trustee. The Liquidating Trustee shall have the exclusive right to file the Causes of Action.  All Claims objections must be filed within sixty (60) days after the Effective Date or such other time as may be extended upon Order of the Bankruptcy Court.

A Creditor who has filed a proof of claim by the Bar Date that is not subject to objection or dispute, or who is not listed on the Schedules as disputed, unliquidated or contingent shall be granted temporary allowance of its filed claim for the **sole and limited** purpose of voting on the Plan.  The Debtor specifically reserves the right to object to Claims for voting purposes.

## C.     Plan Distributions and Disbursing Agent

Distributions to Creditors and Interest Holders will be made in accordance with the Plan and the Liquidating Trust Agreement.  No Distributions will be made to any claimant unless that claimant has an Allowed Claim or Allowed Interest.  The Liquidating Trustee will establish a Disputed Claims Reserve in an amount sufficient to pay any unresolved Claims in full if and when they are Allowed.  No interest shall accrue or be paid for any claim amounts reserved and ultimately paid except in circumstances provided above for the treatment of Class 1. The Liquidating Trustee will serve as the disbursing agent for all Allowed Claims and Allowed Interests. Any distributions shall be made in the prudent and

FENNEMORE CRAIG, P.C.

PHOENIX

Case 2:18-bk-01594-DPC    Doc 326    Filed 04/29/19    Entered 04/29/19 10:06:42    Desc
Main Document    Page 17 of 27

sole discretion of the Liquidating Trustee as Assets are liquidated all in accordance with the Liquidating Trust Agreement.

**D.     Amendment of Claims**

A Claim may be amended prior to the Effective Date only as agreed upon by the Liquidating Trustee and the holder of the Claim or as otherwise permitted by the Bankruptcy Court and Bankruptcy Rules. After the Effective Date, a Claim may be amended to decrease, but not to increase, the amount thereof.

**E.     Full and Final Satisfaction**

All payments and distributions under the Plan shall be in full and final satisfaction, settlement, release, and discharge of all Claims and Interests.

## ARTICLE VI

## CONDITIONS TO CONFIRMATION

The following are conditions to the Effective Date:

(a) The Confirmation Date has occurred;

(b) The Confirmation Order has been entered and is a Final Order, except that the Debtor and the Committee reserve the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order, under circumstances that would moot such appeal;

(c) No request for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code has been made, or, if made, remains pending.

FENNEMORE CRAIG, P.C.

PHOENIX

14818417-1

(d) The Corporate Documents and the Liquidating Trust Agreement have been executed and filed if appropriate.

## ARTICLE VII

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising out of and related to the Chapter 11 Case for, among other things, the following purposes:

(a) To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(b) To hear and determine any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date;

(c) To hear and determine all matters with respect to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

(d) To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(e) To hear and determine all applications for compensation and reimbursement of professional claims;

(f) To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the

Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated by the Plan or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)     To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(i)     To issue orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

(j)     To enter, implement or enforce orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(k)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)     To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

(m)     To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any of the Plan

documents or any other contract, instrument, release or other agreement or document related to the Plan and the Disclosure Statement;

(n)     To recover all Property of the Debtor's Estate, wherever located and whether vesting in the Liquidating Trust pursuant to the Plan;

(o)     To hear and determine all disputes involving the existence, nature or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(p)     To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtor or the Liquidating Trust  pursuant to the Plan, Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(q)     To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Chapter 11 Case with respect to any Person;

(r)     To hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of any post-petition agreements;

(s)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(t)     To enter a final decree closing the Chapter 11 Case.

The Liquidating Trust and the Liquidating Trustee shall be deemed to have and be vested with the full authority and standing to continue, institute, prosecute, and defend

such matters, claims, actions, or Causes of Action which may or could have been commenced prior to the Effective Date or identified or brought subsequent thereto.

# ARTICLE VIII

# **EFFECT OF CONFIRMATION**

A.    **Vesting of Assets**

Upon the Effective Date, pursuant to Sections 1141(b) and (c) of the Bankruptcy Code, the Assets shall vest in the Liquidating Trust, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise expressly provided in the Plan. All Liens, Claims, encumbrances, charges, and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan.

B.    **Preservation of Causes of Action**

All Causes of Action shall vest in the Liquidating Trust and are specifically preserved. The Liquidating Trust through its Liquidating Trustee shall have standing to bring any and all Causes of Action. At the present time, the following potential defendants have been identified:  All current and former officers and directors of the Debtor, the law firm of Legal and Compliance, LLC, Summit Capital, Upeva, Gregg Johnson, Donna Moore, and Wayne Rich, and any other Person with, by or through which any of the foregoing potential defendants may have acted in relation to any Causes of Action.

Investigations of the Causes of Action are ongoing.  Accordingly, no Person may rely on the fact that the Plan and Disclosure Statement do not identify a particular Person or Cause of Action.

Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Liquidating Trust may have or choose to assert under any provision of the Bankruptcy Code or any applicable non-bankruptcy law.

## C.   Transfer of Causes of Action

In accordance with Bankruptcy Code § 1123(b)(3), the Causes of Action will be retained and reserved for the Liquidating Trust, and will be administered by the Liquidating Trustee, who is designated as the post-confirmation Liquidating Estate's representative under Bankruptcy Code §1123(b)(3)(B) for purposes of the Causes of Action.

## D.   Binding Effect

The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

## E.   Dissolution of Committee.

On the Effective Date, (a) the Committee shall dissolve and its members shall be released of their respective duties, responsibilities and obligations in connection with the Chapter 11 Case or the Plan; and (b) the retention or employment of the Committee's respective professionals and agents shall be terminated, other than with respect to filing the Committee's final fee application.

FENNEMORE CRAIG, P.C.
PHOENIX
14818417.1

**F.** **Setoff and Recoupment**

The Liquidating Trust may, but shall not be required to, set off or recoup against any Claim and any distribution to be made on account of that Claim, any and all claims, rights, and Causes of Action of any nature that the Liquidating Trust may have against the holder of that Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effect a set off or recoupment nor the allowance of any Claim under the Plan shall constitute a waiver, abandonment, or release by the Liquidating Trust of any of those claims, rights, and Causes of Action that the Liquidating Trust may have against the holder of the Claim. To the extent the Liquidating Trust fails to setoff or recoup against a holder and seek to collect a claim from that holder after a distribution to the holder pursuant to the Plan, the Liquidating Trust shall be entitled to full recovery on its claim against that holder of a Claim.

**ARTICLE IX**

**MISCELLANEOUS PROVISIONS**

**A.** **Binding Effect of Plan**

The provisions of this Plan shall bind the Debtor, Creditors, and any Interest Holders, and shall bind any Person asserting a Claim against the Debtor or an Interest in the Debtor, whether or not the Claim or Interest arose before or after the Petition Date or the Effective Date, whether or not the Claim or Interest is impaired, and whether or not the Person has accepted the Plan.

**B.** __Appeals__

In the event of an appeal of the Confirmation Order or any other kind of review or challenge to the Confirmation Order, and provided that no stay of the effectiveness of the Confirmation Order has been entered, the Bankruptcy Court will retain jurisdiction to implement and enforce the Confirmation Order and the Plan according to their terms, including, but not limited to, jurisdiction to enter such orders regarding the Plan or the performance thereof to implement the Plan.

**C.** __Modification and Amendment of Exhibits, Schedules, and Appendices__

The Debtor may modify or amend the terms of any document or agreement that is an Exhibit, schedule or appendix to the Plan or Disclosure Statement without the need for re-solicitation of votes with respect to the Plan; provided, however, that the modification or amendment does not materially adversely affect the rights of any Person provided in the Plan, and provided further however, that prior notice of the modification or amendment shall be served in accordance with the Bankruptcy Rules or any order of the Bankruptcy Court.

**D.** __Governing Law__

Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Arizona.

**E.** __Headings__

The headings of the Articles, Sections and Subsections of the Plan are inserted for convenience only and shall not limit the interpretation of the Plan.

**F. Amendment and Modification of the Plan**

The Debtor may propose amendments to or modifications of the Plan at any time prior to confirmation of the Plan without the leave of the Bankruptcy Court or as permitted by the Bankruptcy Code or Bankruptcy Rules. After confirmation of the Plan, the Liquidating Trustee may amend or modify the Plan, with the approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of Creditors or other parties in interest as set forth herein, to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, in a manner as may be necessary to carry out the purposes and intent of the Plan.

**G. Effect of Confirmation Order**

The Confirmation Order will include a provision that the Confirmation Order shall be immediately effective and enforceable upon its entry and shall not be subject to any stay under Bankruptcy Rule 3020(e) or otherwise.

**H. Quarterly Fees**

The quarterly fees required by 28 U.S.C. § 1930(a)(6) will be paid by the Liquidating Trustee to, and reports will be filed with, the Office of the United States Trustee until application is made for entry of a final decree. Application for a final decree can be made when the Plan has been fully administered, which for purposes of the Plan shall mean when the Plan has been substantially consummated, as that term is defined in Section 1101(2) of the Bankruptcy Code

**I.** **<u>Notices</u>**

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage-prepaid, first-class mail, hand-delivery, facsimile, or email.

**J.** **<u>Conflicts between Plan and Confirmation Order.</u>**

In the event the terms of the Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

DATED this 29th day of April, 2019.

                                    **STAR MOUNTAIN RESOURCES, INC.**


                                    By: _/s/ Joseph Marchal_____
                                              Chief Executive Officer